UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| IN RE: | CASE NO. |
|---|---|
| GRAND SEAS RESORT PARTNERS, a Florida general partnership, | CHAPTER 11 |
| Debtor. | |

**DEBTOR-IN-POSSESSION'S APPLICATION
FOR EMPLOYMENT OF HINSHAW & CULBERTSON, LLP
AS COUNSEL FOR DEBTOR-IN-POSSESSION**

GRAND SEAS RESORT PARTNERS, a Florida general partnership, the above-captioned debtor (the "**Debtor**"), respectfully requests an order of the Court authorizing the employment of MICHAEL D. SEESE and the law firm of HINSHAW & CULBERTSON, LLP, to represent the Debtor in this case (the "**Case**"), and states as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for relief requested is U.S.C. § 327(a).

**BACKGROUND**

3. The Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code[1] (the "**Bankruptcy Code**") on September 4, 2009 (the "**Petition Date**"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor is in possession of its assets and managing its affairs as a debtor-in-possession. As of the date hereof, no trustee, examiner, or statutory committee has been appointed in this Case.

---

[1] 11 U.S.C. §§ 101 et seq.

A.   **Organizational Background**

4. The Debtor is a Florida general partnership owned by Grand Seas M, Inc. and IBER, LLC - each owns a 50% general partnership interest. Grand Seas M, Inc. is the Debtor's managing general partner.

B.   **Business Operations**

5. The Debtor is engaged in the marketing and sales of timeshare condominium units, the ownership of food service. The Debtor contracted with a property manager who was responsible for managing the property for the benefit of timeshare and other users as well as providing services for the homeowners' association.

6. The Debtor's operations are situated on 800 feet of oceanfront property located at 2424 North Atlantic Boulevard, Ormond Beach, Florida 32174. The operations include 175 guest rooms, banquet and restaurant facilities, 3 pools and other common elements.

7. The Debtor owns the developer retained property consisting of parking lots, restaurants, meeting rooms, and the lobby. The Debtor also owns a portfolio of 850 unsold timeshare units – each comprises 1 week's usage – with an estimated value of $4,950,000.00, as well as the Consumer Loan Documents (hereafter defined) executed and provided in connection with previously sold timeshare units. The balance outstanding under the Consumer Loan Documents is approximately $19,000,000.00.

8. In a typical transaction involving the sale of a timeshare unit, the Debtor sells a timeshare unit, ordinarily consisting of 1-week usage of a condominium unit. The purchaser pays a down payment of 10-20%, with the balance represented by a promissory note and

mortgage (collectively, the "Consumer Loan Documents"). The promissory note is typically for a 10-year term with an annual interest rate of 16.9%.

9. Historically, the Debtor contracted with sales and marketing and management companies. The sales and marketing agent handled the marketing and sales of timeshare units for a fee based on a percentage of the gross sales price. The management company handled the front-desk services, housekeeping, maintenance and other services on behalf of the homeowners' association. The management company invoiced and was paid by the homeowners' association in consideration for the services provided.

C. **Pre-Petition Financing**

10. Prior to the Petition Date, the Debtor entered into a loan and security agreement dated December 19, 2003 with Textron Financial Corporation ("Textron"), as amended on May 26, 2004, May 25, 2005, December 14, 2005, August 20, 2007 and May 2, 2008 (collectively the "Textron Loan Documents"). Pursuant to the Textron Loan Documents, the Debtor was able to borrow up to $28,000,000.00.

11. Under the Textron Loan Documents, Textron advanced 90% of the amount represented by the promissory note under the Consumer Loan Documents. In exchange for the financing, the Debtor pledged the Consumer Loan Documents as collateral to Textron. By way of example, the Debtor sells a timeshare unit for $10,000.00. In consideration for the timshare unit, the purchaser pays a $2,000.00 down payment to the Debtor (which is retained by the Debtor for operations), and the balance of the purchase price, or $8,000.00, is represented by a promissory note and mortgage (the Consumer Loan Documents). Textron then advances an amount equal to 90% of the outstanding balance, or $7,200.00 to the Debtor, in exchange for which the Debtor pledges the Consumer Loan Documents as collateral. In accordance with the

Textron Loan Documents, consumers make payments under the Consumer Loan Documents directly to a third-party servicing agent. All payments received on account of the Consumer Loan Documents are applied under the Textron Loan Documents first to interest and then to principal.

12. As of September 4, 2009, Textron was owed approximately $14,200,000.00. The Debtor believes the book value of the pledged collateral is approximately $19,000,000.00. In considering the value of its collateral, it is believed that Textron only includes the value of the "eligible" pledged receivables, which is defined as those receivables under 60-days. The estimated value of the "eligible" pledged receivables is approximately $15,200,000.00.

D. **Events Precipitating Bankruptcy**

13. In or about January 2009, Textron ceased financing under the Textron Loan Documents. Absent financing, and in light of the fact that payments made pursuant to the Consumer Loan Documents are made directly to a third-party servicing agent and applied in their entirety to the debt owed to Textron, the Debtor was forced to operate without a substantial portion of operating revenue. Since such time, Textron has prevented the Debtor from pursuing enforcement of the Consumer Loan Documents and, therefore, the Debtor has been unable to pursue collection or foreclosure remedies. Historically, when the Debtor foreclosed on a timeshare unit, the Debtor was able to resell the timeshare unit. Consequently, the Debtor has not only been prevented from pursuing enforcement remedies, but the Debtor has lost the ability to convert a non-performing asset into a performing asset.

14. The homeowners' association maintains that it overpaid for certain services and asserts a claim against the prior management company for approximately $700,000.00. The homeowners' association asserts a claim against the Debtor for unpaid fees in the amount of approximately $500,000.00 relating to the Debtor's portfolio of timeshare units. The

18420217v1 903970 71604

homeowners' association maintains the foregoing have hampered its ability to pay for certain services. The homeowners' association, by and through the prior management company, invoiced timeshare unit owners for association fees at year-end and collected the fees through the first quarter of each year.

15. As a result of the foregoing, the Debtor has recently taken steps to make arrangements for a new management company, effective January 2010, when the homeowners' association will presumably have sufficient funds to pay for ongoing services. In the meantime, the Debtor will provide the management services and invoice the homeowners' association, but will likely offset against fees to be invoiced on account of the portfolio of unsold timeshare units owned by the Debtor.

### E.  Retention of CRO

16. In or about July 2009, the Debtor retained a consultant to assist the Debtor in analyzing and working out its operation. In light of the consultants working knowledge of the Debtors' operations, assets, financials and dealings with Textron, the Debtor elected to retain the consultant as a chief restructuring officer in order to assist with the Debtor's reorganization efforts.

### RELIEF REQUESTED AND BASIS THEREFOR

17. Subject to the approval of this Court, the Debtor desires to employ MICHAEL D. SEESE ("**Seese**") and the law firm of HINSHAW & CULBERTSON, LLP ("**H&C**") as attorney(s) in this Case.

18. Seese and H&C are qualified to practice in this Court and to advise the Debtor on its relations with, and responsibilities to, the creditors and other interested parties.

19.     H&C's depth of experience in bankruptcy matters, and, especially, in business reorganizations, makes H&C qualified to deal effectively with the legal issues that may arise in the context of this Case. Therefore, the Debtor believes that H&C is well qualified to serve as their bankruptcy counsel and that retention of H&C is in the best interests of the estate.

### SERVICES TO BE RENDERED

20.     H&C's services are necessary and will enable and assist the Debtor in performing its duties as debtor and debtor-in-possession. In connection with this Case, H&C will render the following types of professional services:

   a. Advise the Debtor generally regarding matters of bankruptcy law in connection with this Case;

   b. Advise the Debtor of the requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, applicable bankruptcy rules, including local rules, pertaining to the administration of the Case and U.S. Trustee Guidelines related to the daily operation of its business and administration of the estate;

   c. To prepare motions, applications, answers, proposed orders, reports and any other papers necessary in connection with the administration of the estate;

   d. To negotiate with creditors, prepare and seek confirmation of a plan of reorganization and related documents, and assist the Debtor with implementation of any plan;

   e. To assist the Debtor in the analysis, negotiation and disposition of estate assets for the benefit of the estate and its creditors;

   f. Review executory contracts and unexpired leases;

   g. To negotiate and document any debtor-in-possession financing and exit financing;

   h. To advise the Debtor regarding general corporate matters and litigation issues; and

   i. To render such other advice and services as the Debtor may require.

### DISINTRESTEDNESS OF PROFESSIONALS

18420217v1 903970 71604

21. To the best of the Debtor's knowledge, neither said attorneys nor said law firm has any connection with the creditors or other parties in interest or their respective attorneys, except as disclosed in the Affidavit in support of this Application.

22. H&C has agreed to accept the following as compensation for the services to be rendered and expenses to be incurred in connection with representation of the Debtor:

   a. a general retainer in the amount of $35,959.50; and

   b. any such additional sums as may be allowed by this Court based on the time spent and services rendered, the result achieved, the difficulty and complexity encountered, and other appropriate factors.

H&C will not be paid any compensation by the Debtor except upon application to and approval by the Court after notice and hearing.

23. As disclosed more fully in the Affidavit, H&C has represented the Debtor prior to the date of this Application in connection with preparing for this Case.

24. To the best of the Debtor's knowledge and based on the Affidavit of Seese submitted in connection with this Application, there are no arrangements between H&C and any other entity to share compensation to be received in connection with this Case, other than as permitted by section 504 of the Bankruptcy Code.

25. Under applicable provisions of the Bankruptcy Code, and subject to the approval of this Court, the Debtor proposes to pay H&C its standard hourly rates and reimburse H&C for expenses according to H&C's customary reimbursement policies. The hourly rates of H&C attorneys are as follows: (i) members range from $350.00 to $600.00, (ii) associates and of counsel range from $190.00 to $400.00, and (iii) paralegals range from $115.00 to $180.00. The hourly rate of Seese is $450.00.

18420217v1 903970 71604

26. The hourly rates discussed above are H&C's standard hourly rates charged to all clients. These rates are subject to adjustment, generally on an annual basis to reflect, among other things, seniority.

27. Attached to this Motion is the proposed attorney's affidavit demonstrating that MICHAEL D. SEESE and the law firm of HINSHAW & CULBERTSON LLP. are "disinterested" as required by 11 U.S.C. § 327(a) and a verified statement as required under Bankruptcy Rule 2014.

28. A proposed form of Order is attached hereto as Exhibit "A".

**WHEREFORE,** the Debtor respectfully requests an Order: (i) authorizing the retention of MICHAEL D. SEESE and the law firm of HINSHAW & CULBERTSON LLP. on a general retainer, pursuant to 11 U.S.C. §§ 327 and 330, *nunc pro tunc* to September 8, 2009; (ii) setting a final hearing on the Application twenty one days after the Petition Date pursuant to FRBP Rule 6003(a); and (iii) granting such other and further relief as this Court deems proper.

DATED September 8, 2009.

|  | GRAND SEAS RESORT PARTNERS, a Florida general partnership<br><br>By: Grand Seas M, Inc.<br>Its: Managing General Partner<br><br>By: /s/ Marsha G. Mardorsky<br>Marsha G. Mardorsky, President |

18420217v1 903970 71604

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| IN RE: | CASE NO. |
|---|---|
| GRAND SEAS RESORT PARTNERS, a Florida general partnership, | CHAPTER 11 |
| Debtor. | |

AFFIDAVIT OF PROPOSED
ATTORNEY FOR DEBTOR-IN-POSSESSION

**STATE OF FLORIDA**         )
                             )ss
**COUNTY OF BROWARD**        )

MICHAEL D. SEESE, being duly sworn, says:

1. I am an attorney admitted to practice in the State of Florida, the United States District Court for the Southern District of Florida and qualified to practice in the United States Bankruptcy Court for the Southern District of Florida.

2. I am a partner of the law firm of HINSHAW & CULBERTSON LLP ("HC") with offices located at One East Broward Boulevard, Suite 1010, Ft. Lauderdale, FL 33301.

3. I submit this Affidavit in support of the *Debtor-in-Possession's Application for Employment of Hinshaw & Culbertson, LLP, as counsel for Debtor-in-Possession*, in which the Debtor requests authorization to employ HC as bankruptcy, general corporate and litigation counsel (the "Application").

4. The names, addresses and facsimile numbers of HC and the attorneys that are expected to be primarily responsible for this matter are:

18420223v1  903970  71604

Hinshaw & Culbertson LLP
One East Broward Boulevard
Suite 1010
Ft. Lauderdale, FL 33301
Telephone: (954) 467-7900
Facsimile: (954) 467-1024
Michael D. Seese
mseese@hinshawlaw.com

5. HC is well qualified to represent the Debtor in the manner described in the Application. In addition to restructuring, reorganizing and bankruptcy expertise, attorneys at HC provide legal services in corporate, real estate, commercial litigation and intellectual property.

6. Generally, HC intends to render the following types of professional services in connection with the Debtor's case:

    (a) Advise the Debtor generally regarding matters of bankruptcy law in connection with its case;

    (b) To advise the Debtor of the requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, applicable bankruptcy rules, including the local rules, pertaining to the administration of their cases and U.S. Trustee Guidelines related to the daily operations of its business and administration of the estate;

    (c) To prepare motions, applications, answers, proposed orders, reports and papers in connection with the administration of the estate;

    (d) To negotiate with creditors, prepare and seek confirmation of a plan of reorganization and related documents, and assist the Debtor with implementation of the plan;

    (e) To assist the Debtor in the analysis, negotiation, and disposition of certain estate assets for the benefit of the estate and its creditors;

    (f) Review of any executory contracts and unexpired leases;

    (g) To negotiate and document any debtor in possession financing and exit financing;

    (h) To advise the Debtor regarding general corporate, real estate, and litigation issues; and

    (i) To render such other necessary advise and services as the Debtor may require.

7. Prior to the date of the Application, HC rendered legal services to the Debtor in connection with preparation for this case. HC was paid $18,001.50 for these services, and there is no pre-petition balance owed for fees or expenses. As set forth in the *Disclosure of Compensation of Attorney for Debtor*, HC has accepted a fee and cost retainer in connection with the filing of Debtor's bankruptcy petition, which was paid by Marsha Madorsky, the president of Grand Seas M, Inc., the Debtor's managing general partner,r in the amount of $50,000.00 – a balance of $35,959.50 remains.

8. There are no arrangements between HC and any other entity to share compensation received or to be received in connection with this case, except as permitted under Section 504 of the Bankruptcy Code.

9. HC acknowledges that all amounts paid to HC during this case are subject to final allowance by the Court. In the event that the Court disallows any fees or expenses paid to HC the fees and expenses (to the extent previously paid) will be disgorged by HC and returned to the appropriate party or as otherwise ordered by the Court.

10. HC categorizes its billings by subject matter and in compliance with the applicable guidelines of the United States Trustee's office. Under applicable provisions of the Bankruptcy Code, and subject to the approval of this Court, the Debtor proposes to pay. HC its standard hourly rates and reimburse HC for expenses according to HC customary reimbursement policies. The hourly rates of KP-KB- attorneys are as follows: (i) members range from $350.00 to $600.00, (ii) associates and of counsel range from $190.00 to $400.00, and (iii) paralegals range from $115.00 to $180.00. My hourly rate is $450.00.

11. The hourly rates set forth above are HC standard hourly rates charged to all clients. These rates are set at a level designed to compensate HC fairly for the work of its

3

attorneys and paralegals and to cover expenses. HC rates are subject to adjustment, generally on an annual basis to reflect, among other things, changes in seniority.

12. It is HC's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, telephone and telecopier toll and other charges, regular mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, expenses for "working meals," computerized research, transcription costs, as well as non-ordinary overhead expenses such as secretarial and other overtime. HC will charge the Debtor for these expenses in a manner and rates consistent with charges made generally to HC's other clients or as previously fixed by this Court. HC believes that it is fairer to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.

13. HC categorizes its billing by subject matter and in compliance with the applicable guidelines of the U.S. Trustee's Office. HC acknowledges its compensation in the Debtor's case is subject to approval of the Court in accordance with sections 327(a) and 330(a) of the Bankruptcy Code, Bankruptcy Rule 2016, and the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees.

14. Except for the continuing representation of the Debtor, neither I nor the firm has or will represent any other entity in connection with this case and neither I nor the firm will accept any fee from any other party or parties in this case, except as otherwise disclosed by HC and approved by the United States Bankruptcy Court.

**Disinterestedness:**

15. HC has conducted a check for conflicts of interest and other conflicts and connections with respect to the Debtor's bankruptcy case. HC maintains a database containing the

names of current, former, and potential clients and other principal parties related to such clients. HC has a department devoted to the research and analysis of conflict of interest and other conflict issues.

16. I caused HC to review and analyze the conflict database to determine whether HC has any connection with the principal parties in interest in this case to the best of our knowledge, using information provided to HC by the Debtor on or about February 23, 2009 and information contained in the database. The following is a list of the categories of known entities that HC has searched:

(a) creditors of the Debor;

(b) pre-petition lenders of the Debtor; and

(c) partners of the Debtor.

17. Based on the conflicts search conducted to date and described herein, to the best of my knowledge, neither, I, HC, nor any partner, counsel or associate thereof, insofar as I have been able to ascertain, has any connection with the above-captioned Debtor, its creditors or any other parties in interest, or their respective attorneys and accountants, and the United States Trustee or any person employed in the office of the Unites States Trustee, except as follows:

(a) HC has previously provided legal services to Coca Cola Enterprises ("CCE"). CCE is an unsecured creditor of the Debtor and, according to the Debtor's books and records, CCE is owed **$1,783.74**;

(b) HC has previously provided and currently provides legal services to Experian. Experian is an unsecured creditor of the Debtor and, according to the Debtor's books and records, Experian is owed **$389.30**;

(c) HC has previously provided legal services to Lowes. Lowes is an unsecured creditor of the Debtor and, according to the Debtor's books and records, Lowes is owed **$772.61**;

(d) HC has previously provided and currently provides legal services to Office Depot. Office Depot is an unsecured creditor of the Debtor and, according to the Debtor's books and records, Office Depot is owed **$1,099.96**;

5

(e)     HC has previously provided and currently provides, legal services to Textron, Inc. ("TI"). The services rendered do not relate to this Case. There is no agreement between HC and TI which would preclude HC from representing a party adverse to an affiliate of TI; and

(f)     HC has provided and currently provides legal services to Textron Business Services, Inc. ("TBS"). Upon information and belief, these matters have been inactive in 2009 and there is no agreement between HC and TBS which would preclude HC from representing a party adverse to an affiliate of TBS.

18.     HC has not represented any of the foregoing parties on any matter relating to the Debtor or this case. HC will not render any legal services to any of the foregoing parties in this case. HC will not pursue any objection to a claim, or file any claim or avoidance action, against any of the foregoing parties.

19.     Except as otherwise provided herein, to the best of my knowledge, and based upon the foregoing efforts, HC and the attorneys employed by it are disinterested persons who do not hold or represent an interest adverse to the estate, and except as set forth above, do not have any connection either with the Debtor, its creditors, or any other party in interest in this case or with their respective attorneys our accountants, with the judges of this Court, or with the United States Trustee or any person employed in the Office of the United States Trustee. Therefore, neither f nor the firm represent any interest adverse to the Debtor or the estate, and we are "disinterested" persons as defined in section 10 1(14) and as required by section 327(a) of the Bankruptcy Code.

20.     HC makes the following additional disclosures with respect to HC disinterestedness. References to HC include all members expected to render services in these cases:

(a)     HC is not and was not a creditor, equity security holder, or insider of the Debtor; and

(b)     HC is not and was not, within two years before the date of filing of the petition herein, a director, officer or employee of the Debtor; and

(c)    HC has no interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor or for any other reason.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Michael D. Seese

SWORN TO AND SUBSCRIBED before me this 8th day of September 2009

_____
NOTARY PUBLIC, State of Florida at Large
My Commission expires:

LESLEY PORTUONDO
MY COMMISSION # DD 703625
EXPIRES: December 9, 2011
Bonded Thru Notary Public Underwriters

7

18420223v1 903970 71604