UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| IN RE: | CASE NO. 09-28973-LMI |
|---|---|
| GRAND SEAS RESORT PARTNERS, a Florida general partnership, | CHAPTER 11 |
| Debtor. | |

**DEBTOR-IN-POSSESSION'S *EX-PARTE* APPLICATION
FOR EMPLOYMENT OF FINANCIAL ADVISORS
<u>NUNC PRO TUNC TO SEPTEMBER 24, 2009</u>**

in possession of its assets and managing its affairs as a debtor-in-possession. As of the date hereof, no trustee or examiner with expanded powers has been appointed in this Case.

### A. Organizational Background

4. The Debtor is a Florida general partnership owned by Grand Seas M, Inc. and IBER, LLC - each owns a 50% general partnership interest. Grand Seas M, Inc. is the Debtor's managing general partner.

### B. Business Operations

5. The Debtor is engaged in the marketing and sales of timeshare condominium units, the ownership of food service. The Debtor contracted with a property manager who was responsible for managing the property for the benefit of timeshare and other users as well as providing services for the homeowners' association.

6. The Debtor's operations are situated on 800 feet of oceanfront property located at 2424 North Atlantic Boulevard, Ormond Beach, Florida 32174. The operations include 175 guest rooms, banquet and restaurant facilities, 3 pools and other common elements.

7. The Debtor owns the developer retained property consisting of parking lots, restaurants, meeting rooms, and the lobby. The Debtor also owns a portfolio of 850 unsold timeshare units – each comprises 1 week's usage – with an estimated value of $4,950,000.00, as well as the Consumer Loan Documents (hereafter defined) executed and provided in connection with previously sold timeshare units. The balance outstanding under the Consumer Loan Documents is approximately $19,000,000.00.

8. In a typical transaction involving the sale of a timeshare unit, the Debtor sells a timeshare unit, ordinarily consisting of 1-week usage of a condominium unit. The purchaser pays a down payment of 10-20%, with the balance represented by a promissory note and

mortgage (collectively, the "Consumer Loan Documents"). The promissory note is typically for a 10-year term with an annual interest rate of 16.9%.

9. Historically, the Debtor contracted with sales and marketing and management companies. The sales and marketing agent handled the marketing and sales of timeshare units for a fee based on a percentage of the gross sales price. The management company handled the front-desk services, housekeeping, maintenance and other services on behalf of the homeowners' association. The management company invoiced and was paid by the homeowners' association in consideration for the services provided.

C.  **Pre-Petition Financing**

10. Prior to the Petition Date, the Debtor entered into a loan and security agreement dated December 19, 2003 with Textron Financial Corporation ("Textron"), as amended on May 26, 2004, May 25, 2005, December 14, 2005, August 20, 2007 and May 2, 2008 (collectively the "Textron Loan Documents"). Pursuant to the Textron Loan Documents, the Debtor was able to borrow up to $28,000,000.00.

11. Under the Textron Loan Documents, Textron advanced 90% of the amount represented by the promissory note under the Consumer Loan Documents. In exchange for the financing, the Debtor pledged the Consumer Loan Documents as collateral to Textron. By way of example, the Debtor sells a timeshare unit for $10,000.00. In consideration for the timshare unit, the purchaser pays a $2,000.00 down payment to the Debtor (which is retained by the Debtor for operations), and the balance of the purchase price, or $8,000.00, is represented by a promissory note and mortgage (the Consumer Loan Documents). Textron then advances an amount equal to 90% of the outstanding balance, or $7,200.00 to the Debtor, in exchange for which the Debtor pledges the Consumer Loan Documents as collateral. In accordance with the

Textron Loan Documents, consumers make payments under the Consumer Loan Documents directly to a third-party servicing agent. All payments received on account of the Consumer Loan Documents are applied under the Textron Loan Documents first to interest and then to principal.

12. As of September 4, 2009, Textron was owed approximately $14,200,000.00. The Debtor believes the book value of the pledged collateral is approximately $19,000,000.00. In considering the value of its collateral, it is believed that Textron only includes the value of the "eligible" pledged receivables, which is defined as those receivables under 60-days. The estimated value of the "eligible" pledged receivables is approximately $15,200,000.00.

D. **Events Precipitating Bankruptcy**

13. In or about January 2009, Textron ceased financing under the Textron Loan Documents. Absent financing, and in light of the fact that payments made pursuant to the Consumer Loan Documents are made directly to a third-party servicing agent and applied in their entirety to the debt owed to Textron, the Debtor was forced to operate without a substantial portion of operating revenue. Since such time, Textron has prevented the Debtor from pursuing enforcement of the Consumer Loan Documents and, therefore, the Debtor has been unable to pursue collection or foreclosure remedies. Historically, when the Debtor foreclosed on a timeshare unit, the Debtor was able to resell the timeshare unit. Consequently, the Debtor has not only been prevented from pursuing enforcement remedies, but the Debtor has lost the ability to convert a non-performing asset into a performing asset.

14. The homeowners' association maintains that it overpaid for certain services and asserts a claim against the prior management company for approximately $700,000.00. The homeowners' association asserts a claim against the Debtor for unpaid fees in the amount of approximately $500,000.00 relating to the Debtor's portfolio of timeshare units. The

homeowners' association maintains the foregoing have hampered its ability to pay for certain services. The homeowners' association, by and through the prior management company, invoiced timeshare unit owners for association fees at year-end and collected the fees through the first quarter of each year.

15. As a result of the foregoing, the Debtor has recently taken steps to make arrangements for a new management company, effective January 2010, when the homeowners' association will presumably have sufficient funds to pay for ongoing services. In the meantime, the Debtor will provide the management services and invoice the homeowners' association, but will likely offset against fees to be invoiced on account of the portfolio of unsold timeshare units owned by the Debtor.

E. **Retention of CRO**

16. In or about July 2009, the Debtor retained a consultant to assist the Debtor in analyzing and working out its operation. In light of the consultants working knowledge of the Debtors' operations, assets, financials and dealings with Textron, the Debtor elected to retain the consultant as a chief restructuring officer in order to assist with the Debtor's reorganization efforts.

**RELIEF REQUESTED AND BASIS THEREFOR**

17. Subject to the approval of this Court, the Debtor desires to employ BARRY E. MUKAMAL ("**Mukamal**") and the firm of MARCUMRACHLIN, a division of MARCUM, LLP ("**MarcumRachlin**") as financial advisors in this Case.

18. Mukamal and MarcumRachlin are qualified to advise the Debtor in this Case.

19. MarcumRachlin's depth of experience in bankruptcy matters makes MarcumRachlin qualified to advise the Debtor effectively with the financial and related matters

that may arise in the context of this Case. Therefore, the Debtor believes that MarcumRachlin is well qualified to serve as its financial advisors and that retention of MarcumRachlin is in the best interests of the estate.

## SERVICES TO BE RENDERED

20. MarcumRachlin's services are necessary and will enable and assist the Debtor in performing its duties as debtor and debtor-in-possession. In connection with this Case, MarcumRachlin will render the following types of services:

   a. To advise the Debtor on financial analyses and related matters including, without limitation, advising on business operations and business viability;

   b. To provide valuation services pertaining to the Debtor's assets, including, without limitation, accounts receivable and timeshare intervals;

   c. To advise and assist the Debtor with preparation of financial projections and other analyses relating to the preparation and pursuit of confirmation of a plan of reorganization;

   d. To provide litigation support services; and

   e. To render such other advice and services as the Debtor may require.

## DISINTRESTEDNESS OF PROFESSIONALS

21. To the best of the Debtor's knowledge, neither Mukamal nor MarcumRachlin has any connection with the creditors or other parties in interest or their respective attorneys, except as disclosed in the Affidavit in support of this Application.

22. MarcumRachlin has agreed to accept the following as compensation for the services to be rendered and expenses to be incurred in connection with representation of the Debtor:

18423256v1 903970 71604

      a.      such sums as may be allowed by this Court based on the time spent and services rendered, the result achieved, the difficulty and complexity encountered, and other appropriate factors.

MarcumRachlin will not be paid any compensation by the Debtor except upon application to and approval by the Court after notice and hearing.

23. To the best of the Debtor's knowledge and based on the Affidavit of Mukamal submitted in connection with this Application, there are no arrangements between MarcumRachlin and any other entity to share compensation to be received in connection with this Case, other than as permitted by section 504 of the Bankruptcy Code.

24. Under applicable provisions of the Bankruptcy Code, and subject to the approval of this Court, the Debtor proposes to pay MarcumRachlin its standard hourly rates and reimburse MarcumRachlin for expenses according to MarcumRachlin's customary reimbursement policies. The hourly rates of MarcumRachlin senior managers range from $225.00 to $265.00. The hourly rate of Mukamal is $395.00.

25. The hourly rates discussed above are MarcumRachlin's standard hourly rates charged to all clients. These rates are subject to adjustment, generally on an annual basis to reflect, among other things, seniority.

26. Attached to this Motion is the proposed affidavit demonstrating that Mukamal and the firm of MarcumRachlin are "disinterested" as required by 11 U.S.C. § 327(a) and a verified statement as required under Bankruptcy Rule 2014.

27. Finally, the Debtor seeks to retain Mukamal and MarcumRachlin *nunc pro tunc* to September 24, 2009. In support of *nunc pro tunc* retention, the Debtor interviewed prospective financial advisors and selected Mukamal and MarcumRachlin based on their qualifications. The Debtor requested that Mukamal and MarcumRachlin immediately commence work in light of the fact that a final hearing on cash collateral is scheduled for October 5, 2009. In light of the short

time frame in which to complete the work, there was not sufficient time in which to obtain an order authorizing the engagement of Mukamal and MarcumRachlin prior to September 24, 2009.

28.  A proposed form of Order is attached hereto as Exhibit "A".

**WHEREFORE,** the Debtor respectfully requests an order: (i) authorizing the retention of BARRY E. MUKAMAL and the firm of MARCUMRACHLIN, a division of MARCUM, LLP, pursuant to 11 U.S.C. §§ 327 and 330, *nunc pro tunc* to September 24, 2009; and (ii) granting such other and further relief as this Court deems proper.

DATED September 29, 2009.

|  | **GRAND SEAS RESORT PARTNERS,** a **Florida general partnership**<br><br>By: Grand Seas M, Inc.<br>Its: Managing General Partner<br><br>By: _____<br>       Marsha G. Mardorsky, President |
|---|---|

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| IN RE: | CASE NO. |
|---|---|
| GRAND SEAS RESORT PARTNERS, a Florida general partnership, | CHAPTER 11 |
| Debtor. | |

## AFFIDAVIT OF PROPOSED
## FINANCIAL ADVISOR TO DEBTOR

**STATE OF FLORIDA** )
)ss
**COUNTY OF MIAMI-DADE** )

BARRY E. MUKAMAL, being duly sworn, says:

1. I am a partner in the firm of MARCUMRACHLIN, a division of MARCUM, LLP ("MarcumRachlin") with offices located at One Southeast Third Avenue, Tenth Floor, Miami, Florida 33131.

2. I submit this Affidavit in support of the *Debtor-in-Possession's Ex-Parte Application for Employment of Financial Advisors Nunc Pro Tunc to September 24, 2009,* in which the Debtor requests authorization to employ MarcumRachlin as the Debtor's financial advisors (the "Application").

3. The names, addresses and facsimile numbers of MarcumRachlin and the advisors that are expected to be primarily responsible for this matter are:

18423261v1 903970 71604

MarcumRachlin, a division of Marcum, LLP<br>
One Southeast Third Avenue, Tenth Floor<br>
Miami, Florida 33131<br>
Telephone No. (305) 377-4228<br>
Barry E. Mukamal (barry.mukamal@marcumrachlin.com)<br>
Robert Gellman (robert.gellman@marcumrachlin.com)<br>
Frank Kessler (frank.kessler@marcumrachlin.com)

4. MarcumRachlin is well qualified to serve as financial advisor to the Debtor in the manner described in the Application. MarcumRachlin provides financial advisory and valuation services with an emphasis on real estate.

5. Generally, MarcumRachlin intends to render the following types of services in connection with the Debtor's case:

(a) To advise the Debtor on financial analyses and related matters including, without limitation, advising on business operations and business viability;

(b) To provide valuation services pertaining to the Debtor's assets, including, without limitation, accounts receivable and timeshare intervals;

(c) To advise and assist the Debtor with preparation of financial projections and other analyses relating to the pursuit of confirmation of a plan of reorganization;

(d) To provide litigation support services; and

(e) To render such other advice and services as the Debtor may require.

6. There are no arrangements between MarcumRachlin and any other entity to share compensation received or to be received in connection with this Case.

7. MarcumRachlin acknowledges that all amounts paid to MarcumRachlin during this Case are subject to final allowance by the Court. In the event that the Court disallows any fees or expenses paid to MarcumRachlin the fees and expenses (to the extent previously paid) will be disgorged by MarcumRachlin and returned to the appropriate party or as otherwise ordered by the Court.

18423261v1 903970 71604

8. MarcumRachlin shall categorize its billings by subject matter and in compliance with the applicable guidelines of the United States Trustee's office. Under applicable provisions of the Bankruptcy Code, and subject to the approval of this Court, the Debtor proposes to pay MarcumRachlin its standard hourly rates and reimburse MarcumRachlin its expenses according to MarcumRachlin's customary reimbursement policies. The hourly rates of MarcumRachlin's senior managers range from $225.00 to $265.00. My hourly rate is $395.00.

9. The hourly rates set forth above are MarcumRachlin's standard hourly rates charged to all clients. These rates are set at a level designed to compensate MarcumRachlin fairly for the work of its advisors and to cover expenses. MarcumRachlin's rates are subject to adjustment, generally on an annual basis to reflect, among other things, changes in seniority.

10. It is MarcumRachlin's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, telephone and telecopier toll and other charges, regular mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses (except that MarcumRachlin has agreed not to charge the Debtor for travel time in connection with travel to the Debtor's business premises in Daytona Beach), expenses for "working meals," computerized research, transcription costs, as well as non-ordinary overhead expenses such as secretarial and other overtime. MarcumRachlin will charge the Debtor for these expenses in a manner and rates consistent with charges made generally to MarcumRachlin's other clients or as previously fixed by this Court. MarcumRachlin believes that it is fairer to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.

18423261v1 903970 71604

11. MarcumRachlin shall categorize its billing by subject matter and in compliance with the applicable guidelines of the U.S. Trustee's Office. MarcumRachlin acknowledges its compensation in the Debtor's case is subject to approval of the Court in accordance with sections 327(a) and 330(a) of the Bankruptcy Code, Bankruptcy Rule 2016, and the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees.

12. Except for the continuing representation of the Debtor, neither I nor the firm has or will represent any other entity in connection with this case and neither I nor the firm will accept any fee from any other party or parties in this case, except as otherwise disclosed by MarcumRachlin and approved by the United States Bankruptcy Court.

**Disinterestedness:**

13. MarcumRachlin has conducted a check for conflicts of interest and other conflicts and connections with respect to the Debtor's bankruptcy case. MarcumRachlin maintains a database containing the names of current, former, and potential clients and other principal parties related to such clients.

14. I caused MarcumRachlin to review and analyze the conflict database to determine whether MarcumRachlin has any connection with the principal parties in interest in this case to the best of our knowledge, using information provided to Marchum Rachlin by the Debtor on or about September 24, 2009 and information contained in the database. The following is a list of the categories of known entities that MarcumRachlin has searched:

    (a)    creditors of the Debor;

    (b)    lenders of the Debtor; and

    (c)    partners of the Debtor.

15. Based on the conflicts search .conducted to date and described herein, to the best of my knowledge, neither, I, MarcumRachlin, nor any partner or other employee thereof, insofar

4

as I have been able to ascertain, has any connection with the above-captioned Debtor, its creditors or any other parties in interest, or their respective attorneys and accountants, and the United States Trustee or any person employed in the office of the Unites States Trustee, except as follows: In my capacity as a Chapter 7 panel trustee for the United States Bankruptcy Court for the Southern District of Florida, I currently employ Michael D. Seese and Hinshaw & Culbertson, LLP as my attorneys in a Chapter 7 case.

16.   Except as otherwise provided herein, to the best of my knowledge, and based upon the foregoing efforts, MarcumRachlin and the advisors employed by it are disinterested persons who do not hold or represent an interest adverse to the estate, and except as may be set forth herein, do not have any connection either with the Debtor, its creditors, or any other party in interest in this case or with their respective attorneys our accountants, with the judges of this Court, or with the United States Trustee or any person employed in the Office of the United States Trustee. Therefore, neither I nor the firm represent any interest adverse to the Debtor or the estate, and we are "disinterested" persons as defined in section 10 1(14) and as required by section 327(a) of the Bankruptcy Code.

17.   MarcumRachlin makes the following additional disclosures with respect to disinterestedness. References to Marchum Rachlin include all advisors expected to render services in this Case:

   (a)   MarcumRachlin is not and was not a creditor, equity security holder, or insider of the Debtor; and

   (b)   MarcumRachlin IS not and was not, within two years before the date of filing of the petition herein, a director, officer or employee of the Debtor; and

   (c)   MarcumRachlin has no interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or

_____
Barry E. Mukamal

SWORN TO AND SUBSCRIBED before me this 29th day of September, 2009

_____
NOTARY PUBLIC, State of Florida at Large
My Commission expires: